# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| WASH THAT BABY, LLC, d/b/a THE HUT | § | MO:21-CV-00211-DC-RCG |
| BAR & GRILL AND d/b/a JAMAICAN | § | |
| JERK HUT BAR AND GRILL, AND | § | |
| GEORGE B. ALI, | § | |
|     *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment. (Doc. 28). This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 28).

## I. BACKGROUND

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") filed its Original Complaint against Zenith Solar, LLC, ("Zenith Solar") in this Court on November 8, 2021. (Doc. 1). This suit arises from Plaintiff holding the exclusive commercial license to distribute and authorize the public exhibition of the audiovisual closed-circuit broadcast of the Manny Pacquiao vs. Adrien Broner boxing match telecast on January 19, 2019 including all undercard bouts and commentary (the "Program") for businesses. Plaintiff brings a claim for Satellite Piracy under 47 U.S.C. § 605 and Cable Piracy under 47 U.S.C. § 553.[1] (Doc. 1 at 6–7).

---

[1] Both statutes are pleaded as one count and are pleaded alternatively, to the extent necessary. (Doc. 1 at 6–7).

Defendants Wash That Baby, LLC, d/b/a The Hut Bar & Grill and d/b/a Jamaican Jerk Hut Bar and Grill (the "Establishment"), Melania Spratt[2], and George B. Ali, "chose not to contract with Plaintiff and pay the proper commercial sublicense fee" and "took affirmative steps to circumvent the commercial licensing requirement and unlawfully obtained the Program through an unauthorized cable signal, satellite signal, and/or internet stream." *Id*. at 4. That is "Defendants willfully engaged in wrongful acts to intercept and/or receive the Program for free or at a nominal cost or assisted in such actions, while Plaintiff's legitimate customers paid substantially more for the proper commercial license." *Id*. at 5.

"Defendants did not have license, authorization, permission, or consent from Plaintiff to exhibit the Program in the Establishment" (*id*. at 6) and "Defendants intentionally pirated or assisted in the intentional piracy of the Program for the purpose of their own economic gain. Defendants exhibited the Program for the commercial purpose of attracting paying customers, patrons, and guests, thereby wrongfully benefiting financially by infringing upon Plaintiff's rights" (*id*.) because "[t]he Establishment is a commercial business that serves food and/or drinks to its patrons. The broadcast of the Program at the Establishment was not a private viewing and was not for residential, non-commercial purposes. The public display of the Program at the Establishment was to entice patrons to the Establishment to purchase food and/or drinks while viewing the Program" (Doc. 1 at 5).

Summons was issued as to George B. Ali and Wash That Baby, LLC (together, "Defendants") on November 12, 2021. (Doc. 3). On February 3, 2022 Plaintiff filed two motions, a Motion for Alternative Service on Defendant, Wash That Baby, LLC (Doc. 8) and a Motion to Extend Time to Complete Service of Process (Doc. 9). The Court granted both Motions, giving

---

[2] Plaintiff has voluntarily dismissed its claims against Melanie Spratt with prejudice, thus she is no longer a defendant in this lawsuit. (Docs. 26, 27).

Plaintiff 90 additional days to complete service of process on Defendants, and allowing Plaintiff to serve Wash That Baby, LLC via service on the Texas Secretary of State. (Docs. 10, 11). Plaintiff then successfully served Wash That Baby, LLC on February 24, 2022 and filed its proof of service on March 9, 2022. (Doc. 12).

On April 13, 2022, Plaintiff filed a Motion to Substitute Service of Process on Defendant George B. Ali, seeking to serve George B. Ali via social media. (Doc. 14). Then, on May 3, 2022, Plaintiff filed its Second Motion to Extend Time to Complete Service of Process, seeking 45 additional days beyond the extended time from the Court's first order granting an extension. (Doc. 17). On May 9, 2022, the Court granted both Plaintiff's Motion to Substitute Service on Defendant George B. Ali and also granted Plaintiff an extra 45 days to effectuate service of process. (Docs. 18, 19). Subsequently, on May 18, 2022, Plaintiff filed its proof of service for George B. Ali. (Doc. 20).

To date Defendants have failed to answer Plaintiff's Complaint or otherwise make an appearance in this lawsuit. On June 23, 2022, Plaintiff filed a Motion for Clerk's Entry of Default. (Doc. 21). On June 27, 2022, the Clerk of Court made an entry of default against Defendants. (Doc. 22).[3] On December 28, 2022, Plaintiff filed its Motion for Default Judgment. (Doc. 28).

By its Motion, Plaintiff elects to seek statutory damages for Satellite Piracy under 47 U.S.C. § 605. (Doc. 28-10 at 2). Plaintiff seeks an award of: (1) $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants, jointly and severally, for statutory damages; (2) $30,000.00 in damages from Defendants, jointly and severally, for Defendants' willful acts under 47 U.S.C. § 605(e)(3)(C)(ii); (3) attorney's fees under 47 U.S.C. § 605(e)(3)(B)(iii) from

---

[3] As noted above, between June 27, 2022 and December 28, 2022, Plaintiff and Defendant Melanie Spratt filed a Joint Stipulation of Dismissal only as to claims between Plaintiff and Defendant Melanie Spratt. (Docs. 26, 27).

Defendants, jointly and severally, in the amount of $5,000.00; (4) costs from Defendants, jointly and severally, in the amount of $1,205.00; (5) reasonable attorney's fees from Defendants, jointly and severally, for post-trial and appellate services in the event of the need for post-trial and appellate services, as detailed below; and (6) post-judgment interest.

A hearing was held on the instant Motion for Default Judgment on February 16, 2023 at 3:00 p.m. (Doc. 29). Accordingly, this matter is now ready for disposition.

## II.   LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, the Court considers whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

4

*Lindsey*, 161 F.3d at 893. Second, the court assesses the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief. *See 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Third, the court determines what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III.  DISCUSSION

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment against Defendants.

*a.  Default Judgment is Procedurally Warranted*

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, neither Defendant George B. Ali nor Wash That Baby, LLC have filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendants' total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the past year Defendants have not responded to the

summons and complaint, the entry of default, or Plaintiff's Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding that default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendants have had over eight months to respond to Plaintiff's claims or otherwise appear in this matter. Consequently, any purported harshness of a default judgment is mitigated by Defendants' inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. MO:17-CV-071-DC, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by either Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds that default judgment is procedurally warranted under these circumstances.

b.  *Default Judgment is Substantively Warranted*

### 1. Plaintiff's Satellite Piracy Claim

47 U.S.C. § 605 provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Section 605 falls under the Communications Act. "The FCA [Federal Communication Act] is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the

intercepted transmission." (Doc. 28 at 8) (quoting *Joe Hand Promotions, Inc. v. Macias*, No. 4:11-cv-01773, 2012 WL 950157 at *2 (S.D. Tex. Mar. 19, 2012)). Plaintiff establishes that "On the date of the Program, the LLC conducted business as The Hut Bar & Grill and Jamaican Jerk Hut Bar and Grill and owned, operated, maintained, and controlled the Establishment." *Id*. (citing Docs. 1 at 2, 3–6, 7; 28-1; 28-2 at ¶¶ 4–12; 28-3; 28-5; 28-6; 28-7). Plaintiff also establishes that "on the date of the Program, [Defendant George B. Ali] operated, maintained, and controlled the Establishment with a right and ability to supervise and a direct financial interest in the activities of the Establishment." *Id*. (citing Docs. 1 at 2, 3–6, 7; 28-1; 28-2 at ¶¶ 4–12; 28-3; 28-5; 28-6; 28-7). Further, "the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive holder of the commercial distribution license." *Id*. (citing Docs. 1 at 2, 3–6, 7; 28-1; 28-2 at ¶¶ 4–12; 28-3; 28-5; 28-6; 28-7). Thus Plaintiff has established that in violation of § 605 "Defendants themselves and/or through their agents, servants, and/or employees, intercepted and/or received or assisted in the interception and/or receipt of the telecast of the Program, broadcasted or assisted in the broadcast of the Program to the patrons at the Establishment, and broadcasted the Program to the patrons at the Establishment without paying any sublicense fees to Plaintiff." (Doc. 28 at 10). Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff seeks statutory damages of $10,000.00. *Id*. The claims Plaintiff makes in the Complaint, Motion for Default Judgment, and exhibits attached to the Motion for Default Judgment state a claim for Satellite Piracy, 47 U.S.C. § 605. Therefore, a default judgment is substantively warranted for Plaintiff's claims.

*c. Plaintiff's Right to Relief*

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On February 16, 2023, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of damages. (*See* Doc. 29). Additionally, Plaintiff attached an affidavit regarding attorney fees and costs to its Motion for Default Judgment from which this Court may calculate attorney fees and costs. (Docs. 28, 28-8).

1. **Statutory Damages under 47 U.S.C. § 605**

Here, Plaintiff's Complaint alleges statutory damages that are readily calculable, and Plaintiff also provides such calculations in its Motion for Default Judgment. (Doc. 28 at 10–14). Section 605(e)(3)(C)(i)(II) provides: "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." Here, Plaintiff claims $10,000.00 under the Communications Act. Plaintiff arrives at that number "[g]iven the benefits which Defendants received from the broadcast of the Program (the revenue from the cover charge, the sales during the Program, and establishing good will by providing access to the Program) and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00." (Doc. 28 at 14). Accordingly, Plaintiff should be awarded $10,000.00 in statutory damages.

2. **Damages for Willful Violation under 47 U.S.C. § 605**

Plaintiff seeks additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) "in light of Defendants' actions being willful and 'for purposes of direct or indirect commercial advantage or private financial gain.'" *Id*. (quoting § 605(e)(3)(C)(ii)). Section 605(e)(3)(C)(ii) provides that

8

"the Court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)." Here Plaintiff seeks $30,000.00 for Defendants' willful violation. (Doc. 28 at 16). Plaintiff argues this amount is appropriate because "Defendants specifically and willfully acted to illegally intercept the transmission of the Program for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Program." *Id*. at 14 (citing *Joe Hand Promotions, Inc. v. Malespin*, 99 Civ. 8942 (WHP)(KNF), 2001 U.S. Dist. LEXIS 2037, at *9–*10 (S.D.N.Y. Feb. 27, 2001)). Further, Plaintiff alleges that Defendants' "purpose and intent in exhibiting the Program was to secure a private financial gain and direct commercial advantage by pirating Plaintiff's licensed exhibition and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff," which is exhibited by Defendants' advertisements of the Program, collecting a cover charge of $5 to enter the Establishment to view the Program, selling food and drinks during the Program, and showing the Program on two televisions in the Establishment. *Id*. at 15–16. Based on the above facts the Court finds Plaintiff has established Defendants' violation was willful and thus Plaintiff should be awarded $30,000.00 in additional damages.

### 3. Attorney's Fees and Costs

Finally, Plaintiff's counsel, Jamie King, seeks attorney's fees in the amount of $5,000.00. Section 605(e)(3)(B)(iii) establishes that a party who is aggrieved by any violation of § 605(a) may bring a civil action and the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." § 605(e)(3)(B)(iii).

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on

the case multiplied by the hourly rate in the community for similar work. *Id*. at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id*.; *see also Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve "*Johnson* factors." *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood Cty.*, 16 F.3d 1214 (5th Cir. 1994)).

The time records attached to Ms. King's declaration indicate that the 20 hours spent litigating this case are well grounded and justified. (Doc. 28-8 at 2–4). According to Ms. King's

10

declaration she performed 20 hours at an hourly rate of $250. Having reviewed Ms. King's declaration, the Court finds that this hourly rate is reasonable for an attorney practicing in the field of anti-piracy litigation with comparable experience to Ms. King. *See id*. at 5 (listing cases with attorney's fee awards in favor of Plaintiff in anti-piracy cases in the Western District of Texas). Thus, Plaintiff should be awarded $5,000.00 in reasonable attorney's fees from Defendants.

Plaintiff also requests attorney's fees "in the event of the need for post-trial and appellate services, as follows: (1) "$2,500 for collection of a judgment rendered in this case in the event that Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment, or other process"; (2) "$5,000.00 in the event any Defendant filed a post-judgment or pre-appeal motion"; and (3) "$15,000.00 in the event any Defendant files an appeal to the Court of Appeals for the 5th Circuit." *Id*. at 5 (citations omitted). Other Courts in the Western District of Texas have awarded similar prospective attorney's fees to Plaintiff. *See id*. n.2 (listing cases with prospective attorney's fee awards in favor of Plaintiff in anti-piracy cases in the Western District of Texas). As such, the Court finds Plaintiff's request for attorney's fees "in the event of the need for post-trial and appellate services" reasonable and finds the attorney's fees listed above should be granted.

Finally, Plaintiff seeks costs of $1,205.00. *Id*. at 6. In her declaration, Ms. King provides a list of each cost, what the cost pertained to, and its amount. (Doc. 28-8 at 6). Therefore, Plaintiff should be awarded $1,205.00 in costs from Defendants.

### IV.   CONCLUSION AND RECOMMENDATION

For the aforementioned reasons, it is **RECOMMENDED** that Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 28).

It is also **RECOMMENDED** that a final judgment be entered against Defendants Wash That Baby, LLC and George B. Ali as follows:

1. That Plaintiff hereby recovers statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00 for the Program;

2. That Plaintiff hereby recovers additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $30,000.00;

3. That Plaintiff hereby recovers attorney's fees from Defendants, jointly and severally, in the amount of $5,000.00;

4. Plaintiff hereby recovers reasonable attorney's fees from Defendants, jointly and severally, for post-trial and appellate services in the event of the need for post-trial and appellate services, as follows:

    a. $2,500.00 for collection of the judgment in the event that Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment, or other process;

    b. $5,000.00 in the event that any Defendant files a post-judgment motion or pre-appeal motion that does not result in a reversal of the judgment; and

    c. $15,000.00 in the event that any Defendant files an appeal with the Court of Appeals for the 5th Circuit that does not result in a reversal of the judgment.

5. That Plaintiff hereby recovers costs from Defendants, jointly and severally, in the amount of $1,205.00; and

6. The Court hereby awards to Plaintiff and against Defendants, jointly and severally, post-judgment interest on the amounts awarded herein at the current annual rate from the date of a final judgment in this case until paid.

SIGNED this 7th day of March, 2023.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).